(48 Misc. Rep. 393.)

## SMITH v. MANHATTAN RY. CO.

(Supreme Court, Appellate Term.   November 10, 1905.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—STREET RAILROADS—PROPER APPLIANCES.

Where plaintiff, who was employed to work on an elevated railroad structure, was directed to clear snow from the ties with an iron shovel, which did not necessitate contact with nor dangerous proximity to the electrically charged third rail, defendant company was not guilty of negligence in providing plaintiff with an iron shovel, instead of a wooden one.

2. SAME—ASSUMED RISK.

Plaintiff, having been previously employed for six months to work on the third rail as one of the electrical repair gang, and having knowledge or means of knowledge of the danger incident to contact therewith, assumed the risk.

3. EVIDENCE—EXPERTS—HYPOTHETICAL QUESTIONS.

Where, in an action for injuries, plaintiff testified that particles of molten lead had gone into his eye, but the only other evidence thereof was that of plaintiff's physician, who testified that he took some particles out of the eye, but could not say whether they were lead, or iron, or dirt, it was error to permit hypothetical questions to be asked, including as their most important element the assumption that particles of molten lead had gone into plaintiff's eye.

Appeal from City Court of New York, Trial Term.

Action by Alexander Smith against the Manhattan Railway Company. From a judgment of the City Court of New York in favor of plaintiff, defendant appeals.   Reversed.

Argued before SCOTT, P. J., and BISCHOFF and FITZGERALD, JJ.

Charles A. Gardiner (Alfred E. Mudge, of counsel), for appellant.
Abraham Oberstein, for respondent.

SCOTT, P. J.   When the case is critically examined, it is found that the only negligence charged against defendant is that it failed to furnish plaintiff with a safe implement to work with.   The learned justice charged the jury that no question was involved respecting the provision of a safe and proper place to work, and this instruction was not excepted to by plaintiff.   There is some testimony respecting the failure of defendant to furnish rubber gloves; but all that is immaterial because, owing to the nature of the accident, the use or nonuse of india rubber gloves could have nothing to do with it.   The sole accusation of negligence, therefore, is that defendant was provided with an iron shovel, instead of a wooden one, and was not specifically warned of the danger to which he was exposed.

There is nothing inherently dangerous about an iron shovel, and it could become a dangerous implement upon the elevated railroad structure, only if so used as to come into contact with the third or electrically charged rail.   The plaintiff was not instructed to do anything

which necessitated contact with or dangerous proximity to the third rail. He was told to clear the snow off the ties, and all that he had done before the accident was to clear off the middle part. Other men, provided with nonmetallic brooms, were engaged in cleaning the snow from the rails. The accident occurred in consequence of plaintiff's act in laying down his shovel, so that it made a short circuit between the third rail and a projecting bolt. The plaintiff had been working as one of the repair gang on and about the third rail for six months. He knew that it was heavily charged with electricity, and he knew of the existence of the projecting bolt. It is not to be believed that, after his experience as a member of the electrical repair gang, he did not know that there was danger near the third rail; and he was expressly warned to be careful, or, as some of plaintiff's witnesses said, he was warned not to burn himself. I am quite unable to see wherein defendant was negligent. The shovel was a safe enough instrument for the work which plaintiff was instructed to do, and the warning should have been sufficient for a man who had worked for six months on the third rail as one of the electrical repair gang. I think that the plaintiff should be held to have voluntarily assumed the risks attendant upon the work upon which he was engaged, inasmuch as to do the work he was directed to do, even with an iron shovel, did not involve risk, and as he knew, or had the means and opportunity of knowing, the danger which would result from careless performance of the work on his part.

I am further of the opinion that reversible error was committed in permitting certain questions to be put to an expert medical witness, because the questions involved, as an important, and, indeed, the most important, element, the assumption that particles of molten lead had gone into plaintiff's eye. There was no credible evidence that this had happened. The plaintiff himself said, it is true, that pieces of molten iron flew into his eye; but obviously he could not have known anything about it of his own knowledge. The only other evidence on the subject was that of the physician who attended plaintiff, who, although pressed to say that he took particles of iron or lead out of the eye, refused to say so, being willing to go no further than to say that he took some particles out of the eye, but could not say whether they were lead, or iron, or dirt, while the physician who was the first to examine plaintiff at the hospital could not recall that he cleansed anything out of the eye. It must be said, therefore, that the assumption that molten metal of any kind entered the eye, was wholly unsupported by credible evidence, and therefore the hypothetical questions were based upon an important unproven fact. In view of the contention as to the permanency of the injury and the large verdict, this error cannot well be held to have been other than prejudicial to the defendant.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.